IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| SHAWN EUGENE-CORNELL GREEN | : | NO. 20-00049 |

### MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                                January 28, 2022

Presently before this Court for judgment is a pending decision on whether the defendant, Shawn Eugene-Cornell Green, criminally violated 18 U.S.C. § 111(a)(1); specifically, whether he is guilty of misdemeanor counts of forcibly resisting, opposing, impeding, intimidating, or interfering with a federal officer or their agent. The parties consented to trial before this Court, pursuant to 28 U.S.C. § 636(c). On September 9, 2021, this Court held a bench trial to adjudicate the charges against Mr. Green. For the reasons set forth below, this Court finds Mr. Green guilty of a criminal violation of both counts of 18 U.S.C. § 111(a)(1), as charged in the Second Superseding Information.

### I.     INTRODUCTION

The Second Superseding Information charges Mr. Green with resisting and impeding federal officers. Count One charges:

> On or about January 4, 2020, in the Eastern District of Pennsylvania, defendant SHAWN EUGENE-CORNELL GREEN forcibly resisted, opposed, impeded, intimidated, and interfered with a private security guard, that is, C.S., while C.S. was assisting officers of the United States National Park Service in the performance of their official duties.

Count Two, in turn, claims that:

1

On or about January 4, 2020, in the Eastern District of Pennsylvania, defendant SHAWN EUGENE-CORNELL GREEN forcibly resisted, opposed, impeded, intimidated, and interfered with an officer of the United States, that is, United States National Park Service Officer J.K., while J.K. was engaged in performance of his official duties.

## II.   SUMMARY OF EVIDENCE

### A. Government's Evidence

The government's evidence comprised the testimony of Christian Santell, Jordan Keiffer, Martina Meyers, Wayne Lamb, and Brian Przystawski and the following exhibits:

> (1) A video of the events of the evening of January 4, 2020;
> (4) A photo of Defendant inside Independence Hall;
> (10) A map of the block of Independence Hall between 6th and 5th Streets in Philadelphia;
> (11) A photo depicting the west wing entry and exit gate;
> (12) A photo depicting the west wing side exit gate only with two posted signs to not enter;
> (13) A photo depicting the daytime view of the west wing entry and exit point;
> (14) A photo of Independence Hall from the north side of Chestnut Street;
> (15) A photo depicting the sleeve on which it is written on the right-hand side of the photo "SecTek Protective Services";
> (16) A photo depicting a badge with the words "SecTek Security Officer" and a badge number of "1771";
> (17) A photo depicting the winter coat with the badge required to be worn by SecTek security officers.

### B. Defense's Evidence

Defendant's evidence consisted of the testimony of Shaun Eugene-Cornell Green and one exhibit:

> (11) The prisoner remand form with Defendant's information and charges.

### III.     DISCUSSION

This is a non-jury criminal matter.  Pursuant to Rule 23(c) of the Federal Rules of Criminal Procedure, this Court sets forth below its findings of fact and conclusions of law.

#### A. The Parties' Undisputed Findings of Fact

This Court asked the parties to submit their proposed findings of fact.[1]  What follows is a summary elicited from the parties' submissions, reflecting what this Court has deemed the undisputed findings of fact.

##### 1. Defendant's Entrance into the Prohibited Area

On January 4, 2020, Shawn Eugene-Cornell Green entered Independence Park to walk from 6th Street to 5th Street in Independence Hall's secured area.  Gov. at 3; Def. at 6.  Mr. Green was wearing headphones at the time.  Gov. at 4; Def. at 2.

##### 2. Defendant's Interaction with Guards Santell and Speaks

Christian Santell and Naomi Speaks, guards for SecTek, wore jackets that said "SecTek Protective Services" and badges stating "SecTek Officer," as they guarded the premises that evening.  Gov. at 3; Def. at 2.  Mr. Green saw the officers' jackets and badges.  Gov. at 4; Def. at 2.  As Mr. Green walked into the secured area, Guard Speaks approached Mr. Green, pointing and motioning him towards Chestnut Street.  Gov. at 3; Def. at 2.  Once Guard Santell and Speaks approached him, Mr. Green asked why he could not be on the property.  Gov. at 4; Def. at 2.  Guard Santell put out his arm to block Mr. Green from continuing.  Gov. at 5; Def. at 2.  Guard Santell then took Mr. Green to the ground.  Gov. at 5; Def. at 3.  As a result of his interaction with Mr. Green, Guard Santell suffered a sprained wrist.  Gov. at 11; Def. at 4.

---

[1]  Government's Proposed Findings of Fact and Conclusions of Law ("Gov.") and Defendant's Proposed Findings of Fact and Conclusions of Law ("Def.").  *United States v. Green*, No. 20-00049 (E.D. Pa. 2020).

### 3. Defendant's Interaction with Rangers Keiffer and Meyers

National Park Rangers Jordan Keiffer and Martina Meyers arrived at the scene. Gov. at 6; Def. at 3. Guard Santell had Mr. Green restrained in a bear hug and Mr. Green was pushing against Guard Santell. Gov. at 6; Def. at 3. Ranger Keiffer asked Mr. Green to put his hands behind his back for approximately 20-30 seconds. Gov. at 7; Def. at 3. Mr. Green did not comply with attempts to handcuff him. Gov. at 7; Def. at 3. Ranger Myers was able to handcuff Mr. Green's right wrist. Gov. at 7; Def. at 3. Ranger Keiffer performed an armbar takedown of Mr. Green. Gov. at 8; Def. at 3. Mr. Green landed on the ground with his right arm handcuffed and held by Ranger Meyers and his left arm underneath him. Gov. at 8; Def. at 4. Guard Santell claimed that Mr. Green was reaching for his duty belt. Gov. at 8; Def. at 4. Ranger Keiffer described Mr. Green as shifting his weight while on the ground. Gov. at 8; Def. at 4. Ranger Keiffer was able to use his baton to remove Mr. Green's arm from underneath him and secure his other hand into handcuffs. Gov. at 9; Def. at 4. As a result of his interaction with Mr. Green, Ranger Keiffer suffered injuries to his right arm and abrasions to his knees. Gov. at 12; Def. at 4.

### 4. Defendant's Post-Arrest Statements

Mr. Green provided two false names when officers attempted to identify him. Gov. at 10; Def. at 4. It was only after Ranger Lamb informed Mr. Green that there were penalties for lying to law enforcement that Mr. Green then provided his correct name, social security number, and date of birth. Gov. at 10; Def. at 4. Mr. Green at some point began performing karate moves and said to officers, "I could have used these moves earlier." Gov. at 11; Def. at 4.

### B. The Court's Additional Findings of Fact

In addition to the above findings of fact which this Court accepts as true for purposes of rendering its decision, this Court, *sua sponte*, makes the following additional findings of fact.

Independence National Historical Park is a federally protected historic district in Philadelphia, Pennsylvania.  Within the Park is Independence Hall, a UNESCO World Heritage Site at 520 Chestnut Street.  Access by park visitors is limited to the site's daytime operating hours.  Daytime park visitors must pass through security screening to enter the secured area, and this security area is closed to the public at night.

After the events of September 11, 2001, security around Independence Hall increased to guard against terrorist threats.  Along with the visual barriers consisting of "No Entry" signage, various physical barriers such as gates, chain ropes, and bollards surround Independence Hall.  National Park Service Rangers and security guards contracted through SecTek, a security company, protect Independence Hall and the surrounding premises at all hours.

This Court finds that on the evening of January 4, 2020, Guard Santell and Ranger Keiffer were performing their official duties in maintaining the security of Independence Hall.

This Court finds credible testimony that Guards Santell and Speaks, both identified themselves as security officers for the premises, and explained to Mr. Green why he could not lawfully continue forward or remain inside the barricaded area.  N.T. 9/9/21 at 37-39.

Mr. Green admitted his familiarity with the north and south sides of Chestnut Street between 5th and 6th Streets because of his frequent use of these streets.  *Id.* at 165-66, 168.  He additionally admitted that he had walked past and seen the "No Entry" signs, chain ropes, and bollards blocking the secured area for the previous six months.  *Id.* at 166-68.  Therefore, this Court does not find credible Mr. Green's testimony that he was unaware that the south side of this street was a secure area.  *Id.* at 166-169.

This Court viewed multiple times the surveillance recording of the incident.  Mr. Green resisted Ranger Keiffer's attempts to handcuff him, hence, this Court finds credible Ranger Kieffer's testimony that Mr. Green stated, "I'm not going into handcuffs."  *Id.* at 85.

5

### C. The Elements of 18 U.S.C. § 111(a)(1)

The information charges Mr. Green with violating Section 111(a)(1) of Title 18 of the United States Code. 18 U.S.C. § 111(a)(1) states that whoever:

> forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; . . .
> . . .
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, . . . .

Section 1114 covers "any officer or employee of the United States or any agency in any branch of the United States Government . . . or any person assisting such an officer or employee in any branch of the United States Government . . . or any person assisting such an officer or employee in the performance of such duties or on account of that assistance." 18 U.S.C. § 1114.

Under Section 111(a)(1), the government must prove beyond a reasonable doubt that the defendant "forcibly . . . resist[ed], oppose[d], impede[d], intimidate[d], *or* interfere[d] with" Guard Santell or Ranger Keiffer while they were performing their duties. 18 U.S.C. § 111(a)(1). Because the "adverb 'forcibly' modifies all the following verbs in the text of the statute," to satisfy the force element, the government need only prove that the defendant committed one of the prohibited acts with an amount of force equaling "more than mere passive resistance." *United States v. Green*, 543 F. App'x 266, 272 (3d Cir. 2013) (non-precedential); *United States v. Goodwin*, 440 F.2d 1152, 1154 (3d Cir. 1971). This Court defines "force" in the context of Section 111 using its ordinary meaning.[2]

---

[2] In *Johnson v. United States*, the Court recognized that "[i]n more general usage [force] means '[s]trength or energy; active power; vigor; often an unusual degree of strength or energy,' '[p]ower to affect strongly in physical relations,' or '[p]ower, violence, compulsion, or constraint exerted upon a person.'" 559 U.S. 133, 139 (2010) (third, fourth, and fifth alterations in original) (quoting Black's Law Dictionary 717 (9th ed. 2009)). The Court further explained that "[a]lthough a common-law term of art should be given its established common-law meaning . . . , [the Court would] not assume that a statutory word is used as a term of art where that meaning does not fit." *Id.* It rejected the common-

Furthermore, the Third Circuit has concluded that "scienter [specific intent][3] is not required either in the indictment or the proof to sustain a conviction under any portion of Section 111." *Goodwin*, 440 F.2d at 1156. Consequently, "[Section] 111 is a general intent[4] statute" in which the government is only required to show that: (1) it was the defendant's conscious desire or purpose to act in a certain way or to cause a certain result, or that (2) the defendant knew that he was acting in that way or would be practically certain to cause that result. *United States v. Wheeler*, 831 F. App'x 54, 56 (3d Cir. 2020) (non-precedential); Third Cir. Model Jury Instructions – Criminal No. 5.03 (2018).[5] *See United States v. Safehouse*, 408 F. Supp. 3d 583, 598 n.20 (E.D. Pa. 2019) ("Depending on the context, 'intentionally' can mean either 'purposely'—having the conscious object to cause a specific result, or 'knowingly'—being practically certain that one's conduct will cause a result.").

Finally, the test for whether an agent is engaged in the performance of official duties is "whether the agent is acting within that compass or is engaging in a personal frolic of [his] own." *United States v. Nikparvar-Fard*, No. 17-513, 2017 U.S. Dist. LEXIS 212898, at *7 (E.D. Pa. Dec. 29, 2017) (alteration in original) (citations and internal quotation mark omitted).

---

law meaning of "force" in favor of its ordinary meaning because "[u]ltimately, context determines meaning" and the Court does "not force term-of-art definitions into contexts where they plainly do not fit and produce nonsense." *Id.* at 139-40 (citations omitted) (quoting *Gonzales* v. *Oregon*, 546 U.S. 243, 282 (2006)) (Scalia, J., dissenting).

[3] "[A] specific-intent crime . . . is one whose definition requires a special mens rea [criminal intent] above and beyond that which is required for the actus reus [act or conduct] of the crime, . . . ." *United States v. Starnes*, 583 F.3d 196, 209 (3d Cir. 2009) (quoting *United States v. Dollar Bank Money Mkt. Acct. No.*, 980 F.2d 233, 237 (3d Cir. 1992)).

[4] "[A] general-intent crime is one that requires 'proof of knowledge with respect to the actus reus [act or conduct] of the crime,' . . . ." *Starnes*, 583 F.3d at 209 (quoting *Carter v. United States*, 530 U.S. 255, 269 (2000)).

[5] This Circuit's model jury instructions are not binding on this Court. *United States v. Maury*, 695 F.3d 227, 259 (3d Cir. 2012). Nonetheless, "trial judges should use the model jury instructions when applicable," *Brown v. Greene*, 577 F.3d 107, 113 (2d Cir. 2009), and the use of the Third Circuit's own model jury instructions almost certainly cannot constitute error. *See United States v. Peterson*, 622 F.3d 196, 208 (3d Cir. 2010).

7

### D. The Court's Legal Findings

The government has proven beyond a reasonable doubt the elements of 18 U.S.C. § 111(a)(1). This Court finds that Defendant did forcibly resist, oppose, impede, or interfere[6] with Guard Santell and Ranger Keiffer in the performance of their duties.

#### 1. Mr. Green is Guilty of Count One

Mr. Green forcibly resisted, opposed, impeded, or interfered with Guard Santell in the performance of his duty of securing the premises of Independence Hall when he forcibly tried to pass Guard Santell and continue through the secured area towards 5th Street. Gov. at 4-5, Def. at 2. This forcible conduct was intentional, because even after Mr. Green asked and was told why he could not continue forward, he, nonetheless, attempted to proceed toward 5th Street. *Id.* Therefore, I find Mr. Green guilty of Count One as charged.

#### 2. Mr. Green is Guilty of Count Two

Mr. Green forcibly resisted, opposed, impeded, or interfered with Ranger Keiffer in the performance of his duty to detain and handcuff the defendant. Ranger Keiffer asked Mr. Green to put his hands behind his back for approximately 20-30 seconds. Gov. at 7; Def. at 3. Mr. Green not only did not comply with verbal attempts to handcuff him, as conceded by the defense, but he forcibly resisted being handcuffed by continually shifting his weight while on the ground, also conceded by the defense. Gov. at 7; Def. at 3. Therefore, I find Mr. Green guilty of Count Two as charged.

---

[6] The Third Circuit has explicitly decided not to weigh in on whether the statute requires assaultive conduct, instead finding that a determination of whether forcible conduct existed sufficed to decide whether a violation of 18 U.S.C. § 111 had occurred. *Green*, 543 F. App'x at 271, 272 n.9. Therefore, this Court similarly does not address whether Mr. Green's conduct rose to the level of assaultive conduct but assesses his guilt based on whether his conduct forcibly resisted, opposed, impeded, or interfered with the individuals at issue.

### 3. Mr. Green is Not Entitled to an Affirmative Justification Defense

Mr. Green contends that he is entitled to acquittal on Count One because he justifiably took any acts of resistance in self-defense.[7] Def. at 9. He argues that because it was dark, raining, and he was wearing headphones with music on, he could neither see the guards' hand signals to stop; nor did he hear any of their commands as he walked toward them. *Id.* He only managed to do so once he was immediately in front of them. *Id.* Furthermore, Mr. Green argues that it was reasonable for him not to know he was being arrested versus the victim of a "sudden hostile attack." Def. at 10.

A defendant is not "precluded from showing that his use of force was defensible and justified." *Goodwin*, 440 F.2d at 1156. However, this Circuit has stated that a defendant must demonstrate all the following elements to establish an affirmative justification defense:

> First, that [the defendant] was under an immediate, unlawful threat of death or serious bodily injury to himself or to others;
> Second, that [defendant] had a well-grounded [or reasonable] fear that the threat would be carried out if he did not commit the offense;
> Third, that [the defendant's] criminal action was directly caused by the need to avoid the threatened harm and that [defendant] had no reasonable, lawful opportunity to avoid the threatened harm without committing the offense; that is, that [the defendant] had no reasonable lawful opportunity both to refuse to do the criminal act and also to avoid the threatened harm; and
> Fourth, that [the defendant] had not recklessly placed himself in a situation in which he would be forced to engage in criminal conduct.

*United States v. Taylor*, 686 F.3d 182, 186 (3d Cir. 2012) (alterations in original) (citing Third Cir. Model Jury Instructions – Criminal No. 8.04 (2018)); *United States v. Davidson*, 567 F. App'x 90, 95-96 (3d Cir. 2014) (non-precedential). "To carry his burden, the defendant must prove the

---

[7] Mr. Green does not address how he would be entitled to a justification of self-defense in his interaction with Ranger Keiffer, hence, this Court construes his argument for self-defense to be limited to the Count One conduct against Guard Santell.

elements of the defense by a preponderance of the evidence." *Davidson*, 567 F. App'x at 96 (citing *United States v. Dodd*, 225 F.3d 340, 347 (3d Cir. 2000)). "[W]ere the defendant to make this initial showing, the burden would then shift to the government to disprove the defense beyond a reasonable doubt." *Dodd*, 225 F.3d at 346.

Here, this Court finds Mr. Green's arguments in support of a self-defense justification unavailing. Under the first *Taylor* element, Mr. Green would have to show that he was "under an immediate, unlawful threat of death or serious bodily injury to himself." *Taylor*, 686 F.3d at 186. Even assuming, *arguendo*, that Mr. Green perceived Guard Santell as an immediate threat, Guard Santell's interaction with him was lawful based on his position as a security officer for the premises. On this element alone, Mr. Green's self-defense justification fails.

This Court additionally observes that, before taking Mr. Green down, Guards Santell and Speaks both identified themselves as security officers for the premises and explained to him why he could not lawfully continue forward or remain inside the barricaded area. Because Mr. Green was at the very least aware that the south side of Chestnut Street between 5th and 6th Streets was a secure area,[8] and because before pushing past Guard Santell he had not only observed the security officers' uniforms but was informed of their status as such, it was unreasonable for him to believe that he was under a "sudden hostile attack." Def. at 10.

---

[8] Mr. Green testified that he knew he was supposed to cross; instead, he stepped over the chain rope on the south side of Chestnut Street to enter the restricted area. N.T. 9/9/21 at 166. Mr. Green admitted at trial that he knew the area was "blocked off . . . [b]y chain ropes and bollards and signs." *Id.* at 167. He had passed them frequently during the prior six months but had either walked on the north side of Chestnut Street or out in the street past the ropes and bollards, without entering the secured area unlawfully.

10

Because Mr. Green has not proven by a preponderance of the evidence,[9] that, at the time of the offenses described in the preceding paragraphs, he was entitled to a self-defense justification, this Court cannot grant his requested acquittal on the two charges against him.

## IV.     CONCLUSION

For the foregoing reasons, I find Mr. Green guilty on both Counts One and Two. An appropriate order will issue.

---

[9] Because a defendant must establish all four *Davidson* elements to shift the burden to the government to disprove his self-defense claim, and because Mr. Green cannot establish the first element, this Court need not address the remaining elements.